## WILLIAM PRIMM v. WILFORD BARTON.

The husband has authority as survivor of the connubial partnership, where there is no administration upon the wife's estate, to fulfill all contracts respecting the common property, entered into by himself alone or jointly with the wife, before her death ; and where the heir of the wife sought to set aside a conveyance of the surviving husband, which was made in pursuance of such prior agreement by the husband and wife, on the ground that the contract had been forfeited by the obligee, and become null during the life of the wife, it was held that he must make strict proof.

Bond of husband and wife, dated December, 1835, to convey their headright league for the price of six thousand dollars, to wit: five hundred dollars in hand ; two thousand dollars in January, 1837, and three thousand five hundred dollars in twelve months thereafter ; the title to be made upon receipt of the two thousand dollars as aforesaid, and if so made this obligation to be void, etc. ; wife died in 1837 ; in 1839 conveyance of same land by the surviving husband to the obligee in the bond for the price of six thousand dollars, but without any allusion to the bond or prior agreement to sell the land ; the cause being submitted on said facts, it was presumed that the conveyance was made in discharge of the bond, and not that the first contract was abandoned, although it appeared, but not very distinctly how, that possession was delivered with the bond, and that the husband and wife had re-entered in 1837, shortly before her death.

Quere, where the surviving husband, in conformity with the original stipulations of a contract for the sale of real estate belonging to the community, made in the wife's lifetime, without any evidence of fraud, or of positive injury to the heirs of the wife, makes a conveyance, whether such act should be held a new contract in such sense as not to be binding on the heirs of the deceased wife, although the original contract had been forfeited before the wife's death, by failure of the vendee to comply with its conditions.

See this case for circumstances under which it was held that it did not appear that time was of the essence of a contract for the sale of land, nor that the purchaser had made such default as forfeited his right to a conveyance.

Appeal from Fayette. Tried below before the Hon. Thomas H. DuVal.

Suit by appellee against appellant, commenced January 23rd, 1854, to recover in right of his mother, Stacy Barton, one-half of the headright league of his father, William Barton.

A jury was waived, and the cause submitted to Court upon the following admissions and statement of facts. The plaintiff admits :

1st. The execution of the title bond, on file, executed by his father and mother, William and Stacy Barton, on the day and year therein specified, and the land therein mentioned is the land in controversy in this suit.

2nd. That the said Barton delivered not only constructive, but actual possession of the said land to the said Primm, at the time of the execution of the said bond, and that Primm paid the said Barton five hundred dollars at the same time.

3d. That the deed of Barton to Primm to said land and now on file, was not only duly executed at the time and on the day and year it bears date, but that said Primm paid all the consideration money therein mentioned at the same time.

And the defendant Primm agrees to and admits :

1st. That the land sued for in this action was the headright granted to said William Barton as a colonist in 1831. That the grant was made and the land acquired during the coverture of said William and Stacy Barton.

2d. That the plaintiff is the son and only heir of the said William and Stacy Barton, and that he was born on the — day of July, 1831.

3d. That the said Stacy Barton, the mother of the said plaintiff, died on the — day of April, 1837.

4th. That the commuity property of the said William and Stacy Barton, was unencumbered with debts or liabilities of any description, at the time of the death of the said Stacy Barton, so far as this defendant knows.

5th. That the said William Barton was in actual possession of the said tract of land and cultivated a crop on the same during the year 1837, at the close of which year (1837) the said

Primm had made no payment on said land except the sum of five hundred dollars paid at the time of the execution of said title bond, and that said Barton moved off of said land in 1837.

6th. That said Primm is now in possession of said land and has been ever since the 18th day of April, 1839, and that the rents and profits, use and occupation of the same, has been worth the sum of one thousand dollars per annum since the 18th day of April, 1839.

7th. That the papers on file in this cause, except the petitions and answers, together with their indorsements, may be considered in evidence before the Court.

The title bond from Barton and wife to Primm, was as follows:

Know all men by these presents, that we, William Barton and Stacy Barton, of the municipality of Bastrop, otherwise Mina, in the State or province of Texas, are held and firmly bound to William Primm, at present a citizen of the parish of Concordia in the State of Louisiana, in the full and just sum of twenty thousand dollars, lawful money of the State or Province of Texas as aforesaid, to be paid unto the said Primm, his certain attorney, his heirs, executors, administrators or assigns; to which payment, well and truly to be made, we bind ourselves and each of our joint and several heirs, executors and administrators firmly by these presents: sealed with our seals, and dated the 18th day of December, in the year of our Lord, one thousand eight hundred and thirty-five.

The condition of the above obligation is such, that whereas the above bound William Barton and Stacy, his wife, have this day, for the consideration hereinafter mentioned, to-wit: six thousand dollars to be paid as follows, viz.: five hundred dollars in hand; two thousand dollars in January, one thousand eight hundred and thirty-seven; and three thousand five hundred dollars in twelve months thereafter; have granted, bargained, sold, and possession given to the aforesaid William

Primm, a certain lot of land containing one full league, situated, lying and being in Austin's colony, on the west bank of the Colorado river, and in the municipality and State aforesaid, and bounded east by the aforesaid river, and on all other sides by private and public lands; together with all its appurtenances, rights, issues, privileges, immunities, &c., whatsoever belonging thereunto; it being the lot or league No. ——, and that which was granted to the above bound parties by the Mexican Government in virtue of their head and settlement right, and the lot upon which they now hold their residence. The conditions of which having been fully complied with by the above bound parties; which lot or league of land together with its appurtenances, &c., as aforesaid, they, the above bound William Barton and Stacy Barton, do, by virtue of the above obligation, bind themselves and each of their joint and several heirs, executors and administrators to make or cause to be made to the aforesaid William Primm, his certain attorney, his heirs, executors, administrators or assigns, upon the receipt of the two thousand dollars aforesaid, a good and sufficient deed of conveyance, according to the laws and usages of the Mexican Government, or with whatever government and laws may be in use at the time when the aforesaid conveyance shall be made.

Now therefore if the above bound William Barton and Stacy Barton, his wife, their heirs, executors or administrators, shall well and faithfully make and execute, or cause to be made or executed to the aforesaid William Primm, his certain attorney, his heirs, executors, administrators or assigns, upon the receipt of the two thousand dollars as aforesaid, a good and sufficient title to and for the above mentioned and described lot or league of land, according to the laws and usages aforesaid, then the above obligation to be void, otherwise to remain in full force and effect. (Witnessed, signed and sealed.)

This bond was proved and recorded after this suit was commenced. The deed from Barton to Primm, in 1839, was as follows:

This indenture made this, the 18th day of April, in the year of our Lord 1839, between William Barton of the county of Bastrop and Republic of Texas, of the first part, and William Primm of the county of Fayette and Republic aforesaid of the second part, witnesseth that the said party of the first part, for and in consideration of the sum of six thousand dollars, to him in hand paid and secured by the party of the second part, hath given, granted, bargained, sold, alienated, enfeoffed, conveyed and confirmed, and by these presents, doth give, grant, bargain, sell, alien, enfeoff, convey and confirm unto the said party of the second part, his heirs and assigns, the league of land No. 9 (nine) on the west side of the Colorado river, in the county of Fayette, known as the headright league of said Wm. Barton, together with all and singular the hereditaments and appurtenances to the same belonging or appertaining ; to have and to hold the aforesaid league of land, with all and singular its hereditaments and premises, unto the said William Primm, his heirs and assigns forever, to his and their only proper use and behoof. And I, the said William Barton, all and singular the league of land aforesaid, its hereditaments, appurtenances and premises unto the said William Primm, his heirs and asssigns, against me the said William Barton my heirs and assigns and against all, every person and persons whomsoever, shall and will warrant, and forever warrant and defend by these presents.    In witness, &c.    (Witnessed, signed, and sealed.)

This deed was acknowledged next day after its date, and was recorded March 9th, 1840.    The defendant also put in evidence a translated copy of the title from the Government to Barton.    These were all the papers referred to in the agreement of facts.

The Court below gave judgment in favor of the plaintiff for one-half the league of land, and for eight thousand four hundred dollars mesne profits, and the costs of the suit.    Appeal by defendant.

*J. W. Harris*, for appellant.   In deciding this case in favor of the plaintiff in the Court below, it is supposed that the Judge acted under a misapprehension of some of the former decisions of this Court.

The decisions of our Supreme Court relative to contracts for the sale of lands in which the conditions have not been punctually complied with on the part of the vendees, may be divided into two classes, viz. : first, in which time is of the essence of the contract ; second, those in which it is not so made.

It will be seen by reference to the case of Edwards v. Atkinson, 14 Tex. R. 376 to 379 inclusive, and the authorities there cited (which evidently belong to the first of the above classes,) that in this case time can in no point of view be said to be of the essence of the contract.   See the condition of the bond. In order to make time of the essence of the contract the parties must so expressly stipulate.   (See 1 Sugden on Vendors, 357 ; 1 Johns. Ch. R. 370 ;  7 Paige, 22 :  2 Story's Eq. Sec. 776 ; Dart on Vendors, 208, 215, 309.)   In the case under consideration there is in the bond (which is the contract between the parties) no such stipulation either expressed or implied.

It may be remarked that this case differs from that of Edwards v. Atkinson and the authorities in the support of it in other important particulars ; that was an executory contract in which time was expressly made a matter of substance ; and there the party was in default, having it may be said, wilfully failed, neglected and even refused to comply, was still seeking to enforce a specific execution of the contract ; here there is no such stipulation as to time ; this is a contract complied with and executed, and this is a suit to set aside and annul the contract in part, more than twenty years after it was made, and more than seventeen years after it was so complied with and executed.

The case in question is, by the counsel for the appellee, sup-

posed to be governed by the principles recognized in the cases of Browning v. Estes, 3 Tex. R. 476, and again in 11 Id. 245, and 246 ; Howard v. Davis, 6 Id. 182; Dunlap v. Wright, 11 Id. 605, and Lander v. Rounsaville, 12 Id. 198, all of which may be said to belong to the class in which time is not expressly made a matter of substance in the contract. The Court there lay down the proposition, that until the purchase money, is paid, the vendor has the superior title to the property sold. This we admit is true in regard to the property which has not been unconditionally conveyed. To these authorities we might reply generally and say that in this case they were inapplicable, for here the purchase money has been paid, and the property conveyed without condition to the purchaser. But we may here remark that there are the most striking differences between this case and the case of Browning v. Estes, which may be said to be the leading one decided by this Court. There the vendee disavowed the contract ; here he claimed its benefits ; there he refused to pay the purchase money, here he paid it ; there no deed of conveyance was ever made, here one was duly executed and delivered some fifteen years before the institution of this suit. There are so many differences between the case of Browning and Estes and the case under consideration, as to destroy nearly the whole of the analogy between them. It is there remarked that the death of one of the parties can have no effect on the contract, (11 Tex. R. 245,) and in that case the Court intimate that relief would be granted in favor of the vendee thirteen years after he had made default in regard to the payment of purchase money. (Id. 248 ; and seen in connection 3 Id. 464.)

The case which bears the most strict analogy to this, is that of Stramler v. Coe, 15 Tex. R. 211, decided by this Court at its last November Term. In that case as in this, the land was sold in the life time of the wife, and the conveyance was not made by the husband until after her death. But in that case the wife disapproved the sale, in this she sanctioned it ; there

it does not appear that the consideration mentioned in the bond was the same as that expressed in the deed, and in order to give effect to the deed, the Court, in the absence of all proof on the subject, presumed they were the same ; here the same consideration is expressed in both, viz. : six thousand dollars ; there the bond was given to the husband, and the deed was made to the surviving wife, and in the absence of proof, the Court presumed that the deed was made in compliance with the undertaking in the bond ; here the bond and deed are executed in favor of the same individual.   In order to carry out the intention of the contracting parties, the Court have, in that case, gone far beyond anything that will be required in this.   In support of the case of Stramler v. Coe, the Court is referred to the authorities therein cited, viz. :  Caldwell v. Hennen, 5 Rob. R. 20 ;  Grundy v. Collins, 6 Ann. R. 90 ;  and see also Jones v. Jones, 15 Tex. R. 147.

It will be borne in mind that if it were admitted Primm had made default in the payment, such default of one party could not annul the contract under any state of the case, and that Barton who had the right to sell the land could still elect to enforce payment of the purchase money, and he received the money and executed a deed for the land.

*Price*, also, for appellant.

*S. C. Blanton*, for appellee.   An attempt is made to force the bond executed by Barton and wife to Primm, in 1835, upon the notice of the Court ; but it is not believed that it could have the effect of embarrassing a jury, much less a Court.

Should it be insisted that if it was cancelled by consent Barton ought to have taken it up, the answer is, 'tis very true, and so, if it was in any manner connected with the deed executed by Barton in 1839, then it should have been delivered to him.   It but exhibits the very loose and careless transactions

in the country. In this case the obligors in the bond have been dead from fifteen to twenty years, the bond itself not heard of or thought of until the commencement of this suit, when it was dug up from its grave of forgetfulness, placed upon record for the first time, and filed by the defendant in the Court below, as a paper in the cause. Surely its vitality was gone at that time. But allow the bond to have the dignity and importance claimed for it, how then can it avail the appellant as a valid defence against the just claim of the appellee. It was executed in December, 1835, calling for installments in January, 1837, and in 1838. They are admitted *not* to have been paid. In 1839, nearly four years after the bond was executed, and long after the last installment was due, the purchase money was paid and the deed executed.

Of course it is not pretended that Barton had no right to waive the default of Primm, and make him a good deed so far as *his* interest was concerned, but in doing this he should have been careful to have left untouched the interest of others. Mrs. Barton had died after Primm's default in making the first large payment, and after herself and husband had re-entered and taken possession of the premises, and was cultivating and making a crop upon it.

Our law regards a matrimonial alliance as a *co-partnership*. It is admitted that the husband can carry out and complete contracts made during the life-time of the wife, but he must do so strictly, so as not to affect her succession. He may sell the community property, if need be, to pay community debts, but he will search in vain for authority that will allow him, after the death of the wife, to materially alter or change a contract made during coverture, because it would lose its essential elements of a former contract and become, to all intents and purposes, a new one; and it is no answer to say that he may do so *soon* after the death of the wife, and when the amount of interest is small, and the like.

If Mrs. Barton had died *before* the installment became due,

and Primm had offered to comply with the conditions of the bond by making the payments as stipulated, then the "princi-ples of morality as well as the rules of law" would say that Barton should receive the money and make the deed, notwith-standing the demise of the wife subsequent to the execution of the bond ; but this is very far from the true history of the case. The bond was executed by Barton and wife to Primm in De-cember, 1835, and the possession of the land given to him at that time. Primm bound himself, or rather promised to pay two thousand dollars of the purchase money in January, 1837, when they (Barton and wife) bound themselves to make title, &c. Primm failed, as he admits, to make the payment. He was therefore in default, and Barton and wife re-entered and took possession of the premises, (whether with or without the consent of Primm is not material to this point,) and in the month of April of that year, (1837,) Mrs. Barton died in pos-session and was buried on the premises. Primm had forfeited the contract, and the "superior title," the entire interest re-vested in Barton and wife, and the *interest* of the wife, on her death, being cast by our statute *immediately* upon her child or child-ren, it does seem to follow that Barton had no right, two years after her death, and *more* than two years after Primm's de-fault, to recognize and revive the old contract, and make a deed in positive antagonism to the vested rights of another ; besides, such doctrine would seem to be in violation of every principle which regulates partnerships, and to narrow down the marital rights of the wife to an insignificance unworthy the dignity and acknowledged wisdom of our system of jurispru-dence.

But, independent of this argument, abundant evidence ap-pears in the statement of facts, upon which the case was sub-mitted to the Court below, to warrant its judgment for the plaintiff, and its affirmation by this Court. There is nothing showing the slightest connection between the title bond and the deed, and an examination of the two instruments at once

excludes any such presumption. The bond recites that the
purchase money was to be paid by Primm in January, 1837,
and in January, 1838 ; the *deed* shows that the payments were
*not* so made, but declares that the *whole amount* of the purchase
money was *that day* paid, and *that the sale was that day made*,
to wit the 18th day of April, 1839.   And it is no mere matter
of form, because common prudence would have manifested to
the parties, the necessity of making some reference to the bond,
inasmuch as it is clear that the payment was made at a period
long after those fixed by the bond, but no allusion is anywhere
made ;to it, whatever ; again the presumption is irresistible
that if the deed was executed with reference to the bond, that
the bond would have become the subject of conversation, and
been demanded by and surrendered to Barton.   But the man-
ner in which this bond gets into the case, at all, creates in my
mind, distrust of its fairness.

In any aspect of the case, the bond was no longer the legiti-
mate property of Primm after the deed was executed, but it is
no where alluded to—never heard of from the day of its exe-
cution till since the commencement of the suit, a period of al-
most a quarter of a century, when Primm, the obligee, produces
it and has it *recorded for the first time,* and filed in the District
Court, as an important paper in this cause ; but one word more
on this point ; I did not think then, nor do I now believe, that
the introduction of the bond could produce the least embar-
rassment, and for this reason, among others hereafter men-
tioned.

As soon as the plaintiff, in the Court below, established that
its provisions had not been complied with as he did by Primm's
admission, the onus was cast upon Primm to show that Barton
had waived the default, for which purpose he could have intro-
duced his neighbors, or the witnesses to the bond or deed :—
to say the least that could be said, it behooved him to make
some showing for not doing so,—some excuse,—such is the
doctrine established by this Court in many cases.

It does not appear, except inferentially, whether the contract was mutually abandoned, or whether the vendor (Barton) chose to treat it as abandoned, after the vendee's delinquency.

Suppose the latter to be true, it is "too late in the day" to contest his right to do so. This Court has so often determined that character of right, that it is *res adjudicata*, and no longer an open question. In the case of Browning v. Estis, 3 Tex. R. 476, the Court held, that "on failure of the vendee to comply with the conditions precedent (payment of the notes given for the purchase) the principles of morality as well as the rules of law require the restoration of the premises to the vendor." "The vendor in an executory contract has the superior title, and in default of payment, he may consider the purchase as abandoned and treat and hold the property as his own and as possessing the entire interest." (Howards v. Davis, 6 Tex. R. 182; Estes v. Browning, 11 Id. 245–6.) Even when the vendee is in possession and fails to make the first payment according to contract, the Court will presume that he has abandoned it, and the vendor need not notice it further. (Dunlap v. Wright, 11 Id. 605.) And in the case of Lander v. Rounsaville, 12 Id. 198, it is declared by the Court that, "as long as the purchase money remains unpaid, the vendor has the superior title to the land, which he may enforce by an action of trespass to try title ; or the vendee being in default, he may treat the contract as abandoned and sell the land to another." After a full and laborious review of all the authorities, the Court proceeds to say, (in one of the cases cited) that, "this principle is commended by every consideration of justice, honesty and fair dealing between man and man." And thus it seems to be of very little consequence, after the vendor's default, whether the contract was abandoned by consent, or whether the vendor in the exercise of his superior right chose to consider it at an end.

Barton (the plaintiff,) admitted, that the deed from his father to Primm "was not only duly executed on the day and year it

bears date (which was the 18th of April, 1839,) but that Primm paid all the consideration money therein mentioned at the same time." This settles the question as to when the sale, under which Primm holds, was made and the purchase money paid.

Counsel informs me that he relies for a reversal of the judgment of the Court below, on the case of Stramler v. Coe, decided at the last Term of this Court, and not yet reported. I have examined the opinion delivered in this case by Chief Justice Hemphill, with much care, and find no where any thing indicated which would seem to require a reversal of the judgment, but much, very much, on the contrary to sustain it. The case is not at all similar to the one at bar. The sale took place for a valuable consideration, and the whole of the purchase money paid during the existence of the community. The purchase money being paid at the inception of the sale, or agreement of sale, it only remained for Price to execute the deed conveying the legal title, which he did and the Supreme Court say he ought to have done. Now if the purchase money had been paid at the inception of the contract, as in the case of Stramler v. Coe, or at the time fixed by the notes and bond, I should regard the case settled in favor of appellant; but fortunately for the appellee, such is not the case. The Court say (in the same case,) "The heirs of the wife receive her interest, " but incumbered with burthens, which have the same force and " effect upon them, as they have upon the husband, and surviv- " ing partner, and if the husband, neither before nor after the " death of his wife could have brought suit and recovered, as " against his own bond, this land from the obligee or from his " estate, so neither could his children, claiming in right of their " mother, sustain such suit, &c."

Such is admitted to be the law; but when application is made to the case at bar, the analogy is wholly lost. Primm failed to make the payment as stipulated in January, 1837; and so far as the record discloses has never paid, certainly not till the 18th day of April, 1839, and the wife died in April

1837.   Who will then pretend to say that, at the time of the dissolution of the community, Barton could not have recovered the land from Primm had he been in possession? That he could have done so is most clearly settled in the cases of Browning v. Estes, 3 Tex. R. 476 ; Howards v. Davis, 6 Id. 182 ; Browning v. Estes, 11 Id. 245 ; Dunlap v. Wright, 11 Id. 605 ; Lander v. Rounsaville, 12 Id. 198 ; Edwards v. Atkinson, 14 Id. 373 ; and Caldwell v. Hennen, 5 Rob. La. R. 20 ; and Guidry v. Davis and Collins, 6 La. R. 90 ; and Duncan v. Rawls, decided at the last Term of the Court at Galveston.

Again ; the counsel for appellant relies on the case of Caldwell v. Hennen reported in 5 Rob. La. R. p. 20, for a reversal of the judgment of the District Court ; but with all due deference to the opinion of the learned gentleman, I confess my want of ability to discover the applicability of the principles decided in that case, to his side of the one under consideration.   The appellee relies on the same as very high authority to sustain the judgment in the Court below.

The learned Judge in delivering the opinion of the Court holds the following clear and emphatic language, viz : " We concur with the counsel for the plaintiff, that this is the true question which the case presents ; and that the plaintiff in reconvention (Hennen) must show that his father had at the moment the community was dissolved, a title valid against Paulding," (who was then in possession and from whom Caldwell derived his title.) " Claiming as he does," says the Court, " under the community, and under his father as the head of that community, he must show that his father had such title at the dissolution of the community, as would have enabled him in his own right and as tutor of his son, to maintain a petitory action for the lots against Spaling, who appears then to have been in possession, and from whom the plaintiff, Caldwell derives his title.

It is then decided, in effect, that the father of defendant

Hennen, never did have any title to the lots, but held them in trust, for another person. If Alfred Hennen, the father of the defendant, could have maintained an action for the lots at the moment of the dissolution of the community, the defendant's right to recover, will surely not be disputed, and this decision invoked to sustain them. And now, again, permit me to ask, in view of the authorities before cited, who can doubt, for a moment, the right of William Barton, the father of the appellee, to sue for and recover the land, now in controversy against Primm, the appellant, on the —— day of April, 1837, when the community was dissolved, by the death of the appellee's mother? In one of the cases referred to, Edwards v. Atkinson (14 Tex. R. 373,) this Court held that the vendor had the right to refuse the purchase money, though tendered by the vendee, even within three months after maturity, and refuse performance of the bond. But it is contended by the appellant, that appellee's father waived the default; this, it is clear, he had no power to do, beyond his half interest; for if he was not liable in an action for specific performance, at the moment of the dissolution of the community, by reason of the default of the appellant Primm, or from any other cause, the wife's interest was beyond dispute, and descended directly to her son, the appellee. See Stramler v. Coe. 15 Tex. R. 212, and the other authorities before cited on the same point. But the Court is respectfully reminded, that this is placing the argument of the cause upon an imaginary ground, which the counsel for the appellant has most artfully assumed, and which is, in every particular, widely different from the true one. Here, I may be allowed to repeat, for it cannot be avoided in order to get back to the true question at issue. The proof shows that appellee's father, William Barton, entered into the agreement to sell the land to appellant, in December, 1835, and then put him into " actual, not constructive " possession, and by the terms of said agreement, appellant promised and agreed to pay to appellee's father, the sum of two thousand dollars in

January, 1837, and upon the payment of that sum, at the time stipulated, Barton and wife bound themselves in the penal sum of twenty thousand dollars to make a good and sufficient deed to appellant. Well, the appellant admits that he made default, and that the vendors went into possession again and cultivated the same ; and there is no intimation anywhere that the vendee, Primm, ever offered to pay the purchase money at any time ; and whether the contract of the sale was abandoned or mutually cancelled by the parties, is wholly immaterial, for, at any event, it was a question of fact for the jury to determine, and a jury being waived, the duty properly devolved upon the Judge, and his finding will be regarded by this Court, in the same light as the verdict of a jury ; such was the decision in the case of Paul v. Perez, 7 Tex. R. 338.

HEMPHILL, CH. J. There is but one question in this case, and that is whether the act of William Barton, the father, in completing the sale of the land to the defendant Primm, in 1839, was valid and binding, not only on himself, but on the heirs of his deceased wife. The land was sold by Barton on the 18th December, 1835 ; he and his wife both joining in executing a bond of that date for title. The bond is in the usual form, reciting that on that day they had sold and given possession of the land for the consideration of six thousand dollars, to be paid, five hundred dollars in hand, two thousand dollars in Janury, 1837, and three thousand five hundred dollars in twelve months thereafter, covenanting on the receipt of the two thousand dollars, as aforesaid, to execute a good and sufficient title to the land. Stacy Barton, the wife of William, and the mother of the plaintiff, Wilford Barton, died in April, 1837, and on the 18th of April, 1839, William Barton, the surviving husband, conveyed by deed, full title to Primm, the defendant.

It will not be denied that if the whole consideration had been paid in the life-time of the wife, the deed, though made

after her death, would be binding, and could not be impeached by her heirs. (Stramler v. Coe, 15 Tex. R. 211.) Nor would it admit of contest, that if the consideration had been paid by installments at the time stipulated, the deed by the husband and surviving partner of the community could not be disturbed by the heirs of the wife. But in this case the defendant made default in the payment of the two thousand dollars, in January, 1837. The wife died in April, during that default, and the question is whether on the payment of the whole consideration, sixteen months after the last installment was due, the conveyance by the surviving husband is binding on not only his own interest, but on that claimed by the heirs of the wife by community right in the land.

The first inquiry which suggests itself, is as to the legal effect of the default of payment by the purchaser. In law, the vendor, by this default, might have considered the contract at an end, and might have brought an action for possession, or lawfully sold the land to another. But what was the effect in equity? The stipulations are such as to show that time was not of the essence of the contract. Nor is there any evidence that it was such, from the surrounding circumstances. Where there is no stipulation in effect that the contract shall become null and void on default made, and where there are no circumstances which would render it null on such default, Courts of Equity will look to the substance and not to the form of the contract, and as the substance is the sale of the land on the one side, and the purchase on the other, the contract will not be rendered void, nor will parties be denied relief, because there has been failure as to time in the exact performance of the conditions. (Roberts v. Berg, 17 Eng. Law and Chanc. 400.)

The doctrine on this subject is admirably expressed by Lord Redesdale in Lemon v. Napier, 2 Sch. and Lef. 684, viz: " The " Courts, in all cases of contracts for estates in lands, have " been in the habit of relieving where the party from his own

" neglect had suffered a lapse of time, and from that or other
" circumstance, could not maintain an action to recover dam-
" ages at law, and even where nothing exists to prevent his
" suing at law. So many things are necessary to enable him to
" recover at law, that the formalities alone render it very incon-
" venient and hazardous to proceed ; nor could, in many cases,
" the legal remedy be adequate to the demands of justice.
" Courts of Equity have therefore enforced contracts speci-
" fically, where no action for damages could be maintained ;
" for, at law, the party plaintiff must have strictly performed his
" part, and the inconvenience of insisting upon that in all
" cases was sufficient to require the interference of Courts of
" Equity. They dispense with that which would make com-
" pliance with what the law requires oppressive, and in the
" various cases of such contracts they are in the constant habit
" of relieving the man who has acted fairly though negligently;
" thus, in the case of an estate sold by auction there is a con-
" dition to forfeit the deposit if the purchase be not completed
" within a certain time, yet the Court is in the constant habit
" of relieving against the lapse of time ; and so in case of
" mortgage ; and in many instances relief is given against
" mere lapse of time, where lapse of time is not essential to
" the substance of the contract." (Dart on Vendors, 208,
514 ; Story, Jur. Sec. 776.)

Judge Story in Treatise on Equity Jurisprudence, says that
time is not generally deemed in equity to be of the essence of
the contract, unless the parties have expressly so treated it, or
it necessarily follows from the nature and circumstances of the
contract. (*Supra.*)

The mere fact then that Primm had not made payment at
the time stipulated, would not of itself have been any defence
to a suit by him for specific performance ; nor is there any
fact in the case which shows that in equity his default was
such as to have barred him from relief. In the meagre state-
ment of facts on which this cause was submitted to the Court,

it is stated as a circumstance of importance, that Barton was in possession of the land and cultivated a crop there during the year 1837, and that he moved off said laid in that year. But it is not stated that he left the land before 1837, or if he did, why he went back in 1837, and left again in the same year. True it is stated, that Barton delivered actual possession of the land to Primm in December, 1835. But there is no other fact in relation to Primm's possession, except that he is now and has been in possession since the 18th April, 1839. Here is a hiatus in the possession from 1835 to 1839. No evidence that any one was in possession of the land, except that Barton was there during part of the year 1837. We know from public history, that the country on the Colorado was abandoned by the inhabitants in 1836. When did Primm return ? Was he ejected from the land by Barton, or was he in the country in 1837 ? Or were he and Barton both in possession ? These conjectures cannot be answered by any thing found in the statement of facts. Nor is the solution of them of much importance. The fact of possession by Barton in 1837, is a circumstance from which it might be, to some extent presumed, that he intended to reclaim the land ; and had it been shown that such was his object in taking possession, it would have been conclusive that at that time he did not intend to waive the default of the purchaser. But that would not have defeated the rights of the latter. He might notwithstanding have been entitled, on proper showing, to specific performance.

The sum of the whole is, that the contract did not become void on default of payment by the purchaser. It might still have been enforced in equity, and consequently the land did not revert to the vendors, nor was the title of the vendee absolutely divested.

It was in this state of the facts and of the title, that Mrs. Barton departed this life ; her interest in the community descending to her heirs, but charged with its obligations. The

husband, the surviving partner, who, during the life of his wife, had full power to dispose of the property, and who after her death had the powers necessarily appurtenant to the survivor of this partnership, subsequently conveyed the land as he had agreed to do in the life-time of his wife ; and can her heir impeach this deed on any other ground than that the sale was from the beginning made with the fraudulent intent to deprive the wife of a portion of her share in the community ?  The fact that the surviving husband completed the sale stipulated by his bond, is a presumption in favor of its validity, and if this were done voluntarily and without compulsion by him, it raises the further presumption that in his best judgment it was for his own and the interest of this, his minor heir, that the contract should be completed.

There·is no evidence as to the circumstances under which the payment by Primm on the one hand, and the conveyance by Barton on the other, were made ; whether Primm was sued by Barton for the purchase money, or Barton by Primm for the deed, or whether the transaction on the part of both was voluntary.  But admitting that it was voluntary, that each having regard to the legal rights of the other, and to the advantages of the sale, agreed to perform their respective obligations, the voluntary deed of the father, under the circumstances, conveying lands which he, during the existence of the community, had agreed to sell, vests such title to the land as cannot be gainsaid by the heirs of the wife, unless it be shown by clear proof, that the sale was made and perfected to defraud the wife or her heirs.

There is not a scintilla of evidence that there was any such fraudulent intent on the part of the father, throughout the transaction.  The wife having joined in the bond is proof that the sale was not made by fraud to injure her, and there cannot be a shadow of pretence under the facts in evidence, that there was any wrong intended against the plaintiff by his own father in honestly fulfilling his agreement.  The maxim that " fraud

cannot be presumed" applies with peculiar force to cases of this character, in which there is an attempt by a son to invalidate the deed of his father acting not only for himself but virtually for this his minor child, and whose interests, it must be presumed, would be guarded by him with all the solicitude, watchfulness and anxious care of fatherly affection.

Even if time had been of the essence of the contract, yet as the parties to contracts for the sale of land, can waive the default, as the contract does not become so absolutely null by the failure to perform, but that it can be made good by the subsequent agreement or acts of the parties proceeding with the sale or purchase as the case may be, and which are deemed equivalent to a waiver, (Dart, p. 212 ; 6 Beav. 124 ; 4 Y. & C. 503,) it is very questionable whether, under such contract, the heirs of the wife could impeach a deed made by their own father as survivor of the marriage, unless there was evidence of fraud to the injury of such heirs. If the acts were done fairly, in conformity with the original stipulations, and especially where there is no evidence of its being positively injurious, it is questionable whether such act should be held a new contract in such sense as not to be binding on the heirs of the deceased. But the decision of this point is waived, as not necessary to the disposition of this case. Time was not the essence of this contract. For aught that appears it may have been enforced or was enforceable in equity, and the plaintiff having received by inheritance from the mother a share in the community, but charged with its burthens, cannot impeach the deed of his father, the surviving partner, made by him in discharge of his engagement as head of the community, an engagement in which the wife herself joined ; and her act, if it have no other effect, is at least evidence that she was apprised of and sanctioned the contract.

The powers of the survivor of a conjugal partnership over the property of the community, and to enable him to make good outstanding engagements, settle the claims for and against the

community estate, seem not to be well settled.  In Jones v. Jones, 15 Tex. R. 148, we said that as survivor, he had competent authority to discharge the debts of the partnership, and that whether the discharge of debts, or any act he might lawfully do as survivor, be done in his own name, or in his name as survivor, was immaterial.  The law would look to the substance and not to the form ; and we intimated in the same case, that if he disposed of the property of the community in discharge of its legitimate debts, such arrangement could not be disturbed.  We have hitherto had no reason to be dissatisfied with these doctrines ; and believe that such powers are fairly within the scope of the authority, which on reason and principle, must legitimately appertain to the survivor, and especially when the survivor is that member of the partnership who during its existence, had the sole power of administration and sale, with no other restriction than against acts with fraudulent intent to injure the wife—he would not have power to make new engagements, so as to bind the former partnership—but certainly all acts done by the survivor in discharge of prior obligations, and in virtually (if not formally) winding up and settling the affairs of the community, must be legitimate, and not subject to impeachment for the want of authority.

These remarks refer to the power of a survivor prior to the grant of administration on the estate of the deceased partner. After such administration under the present laws, the estate must take the course prescribed under the act of 1848.  (Art. 1211 Hart Dig.)  Judgment reversed and cause dismissed.

Reversed and dismissed.